# Exhibit 5

# GREYHOUND – ADIRONDACK AGREEMENT

The following has been agreed to in conjunction with the concomitantly signed Right of First Refusal Agreement and the Second Amendment of Revenue Pooling Agreement:

1. Gene, Mark, Gregg and Jana will meet and go forward with putting the complete TRIPS SYSTEM in place. This is to be accomplished at the earliest date – no later than March 31, 2000.

2. Both Greyhound and Adirondack will agree that in conjunction with implementing the TRIPS SYSTEM the remaining Accounting and Pool related problems will be resolved amicably. This will include any future accounting Pool or other issues that arise. If there are any problems on which Gene/Gregg cannot reach agreement, including commission payments to the Port Authority, then Jack Haugsland and Jim Kerrigan will have the final word.

3. (a) Greyhound and Adirondack agree to all monthly settlements of the Pool Revenue/ mileage calculations for the period January 1 through September, 1998, as originally negotiated, and Adirondack will agree to Greyhound's and Adirondack's calculations from October 1, 1998 through March 31, 2000. After April 1, 2000, the Pool revenue mileage calculations will be made by Greyhound subject to audit as specified in the Pooling Agreement.

   (b) Greyhound agrees to refund to Adirondack, fifty percent (50%) of the amount incurred by Adirondack for Ticket Imaging System ($141,780.00 x fifty percent (50%) = $70,890.00.

4. Adirondack and Greyhound acknowledge that Jim Kerrigan is a consultant to both Greyhound and Adirondack, and believe that his actions during the past two years have demonstrated that he is fair, objective and committed to the health and well-being of the Greyhound/Adirondack Pool. Both Greyhound and Adirondack see no conflict of interest in having Jim and Jack have the final word on procedures as outlined. Adirondack and Greyhound are determined that the procedure to have Jack Haugsland and Jim Kerrigan have the final word remain in effect until December 31, 2002.

5. Adirondack and Greyhound will confer and review the pricing program for the pooled routes. Adirondack should have equal participation with Greyhound in creating a pricing program that has market acceptance and responds to a bottom-line result. If Gene and Ralph Borland are unable to resolve this pricing problem, it will then be referred to Jack Hugsland and Jim Kerrigan as above described for final disposition.

6. In addition to any other consideration, and in further consideration of this agreement, each party releases and forever discharges the other from any claims arising out of pool revenue mileage calculations and the Imaging Agreement and any problems having to do with the accounting issues prior to June 1, 1999.

7. Each party hereby represents that this Agreement has been duly executed by an authorized representative empowered to bind it.

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement as of the date first set forth above.

**GREYHOUND LINES, INC.**

By: _____
President & CEO

Approved as to form
By _____
Attorney

**ADIRONDACK TRANSIT LINES, INC.**

By: _____  10/14/99
President & CEO