UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ADIRONDACK TRANSIT LINES, INC., *et al.*,

                      Plaintiff,

   -against-                                1:15-CV-01227 (LEK/CFH)

GREYHOUND LINES, INC., *et al.*,

                      Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiffs Adirondack Transit Lines, Inc., Pine-Hill Kingston Bus Corp., and Passenger Bus Corporation (collectively, "Adirondack") commenced the present action against Defendants Greyhound Lines, Inc. and FirstGroup America, Inc. (collectively, "Greyhound"), alleging breach of contract and other causes of action related to the parties' revenue pooling agreement, and seeking declaratory relief construing certain provisions of the agreement. Dkt. Nos. 1, ("Complaint"), 31 ("Amended Complaint"). Presently before the Court is Greyhound's Motion to Transfer to the Southern District of New York. Dkt. No. 26 ("Motion"). Adirondack opposes the Motion, Dkt. No. 50 ("Response"), and Greyhound filed a reply, Dkt. No. 52-1 ("Reply"). For the following reasons, Greyhound's Motion is denied.

**II.    BACKGROUND**

Greyhound Lines, Inc., a Dallas, Texas-based company incorporated in Delaware, provides intercity bus services in the United States, Canada, and Mexico. Dkt. No. 26-1 ("Defendants' Memorandum") at 1. FirstGroup America, also a Delaware corporation, is a Greyhound affiliate whose principal place of business is in Ohio. Resp. at 2. FirstGroup has

operations in Canada that involve the use of Adirondack equipment. Id. at 4. Adirondack and the other plaintiffs, which provide intercity bus services throughout New York, are New York corporations whose principal places of business are in Hurley, New York, which is located in the Northern District of New York. Id. at 1.

Since 1997, Adirondack and Greyhound have been parties to a revenue pooling agreement ("RPA") under which the parties "coordinate services across . . . specified routes [in New York], with each party operating a set percentage of miles." Defs.' Mem. at 1–2. The RPA mandates that the parties share (according to a specified percentage) ticket revenues generated from the routes. Id. at 2. The parties have had numerous disagreements over the RPA in the past few years. Id. The disputes revolve around:

> (a) the sharing of revenue from sales (ticket fares and fees charged) for travel along the Pooled Routes; (b) the parties' obligations to operate buses over an agreed percentage of miles along the Pooled Routes; (c) the business model to be used under the RPA for scheduling buses at various locations along the Pooled Routes (i.e., a "managed capacity" model [in which passengers are assigned seats] versus a "flexible capacity" model [in which passengers are not assigned seats]); and (d) the "cost to sell," which is a negotiated rate to reimburse Greyhound for paying certain operating expenses associated with maintaining stations and terminals along the Pooled Routes.

Resp. at 2–3.

After the parties failed to negotiate a resolution to these disputes, they entered arbitration, a prerequisite under the RPA to the commencement of any litigation. Defs.' Mem. at 2. Under the RPA, arbitration awards are typically nonbinding, but the parties may agree that certain kinds of awards are binding, and awards relating to service adjustments are always binding. Id. The arbitrator issued a ruling on October 14, 2015, finding in favor of Greyhound on some issues and

2

in favor of Adirondack on others. Id. at 2–3. The parties agree that almost all of these findings are nonbinding, but Greyhound argues that the arbitrator also issued (under the exception for determinations about service adjustments) a binding ruling that Adirondack must implement a managed capacity model. Id. at 3. Adirondack disputes Greyhound's characterization of this portion of the arbitrator's ruling, arguing that the entire arbitration award should be nonbinding. Am. Compl. ¶¶ 117–26.

Twenty-five minutes after the arbitrator issued his ruling, Adirondack filed its Complaint in the Northern District of New York. Defs.' Mem. at 3. In addition to seeking a declaratory judgment construing the RPA to prevent the unilateral imposition of "a new business model on the Pool," Compl. ¶ 129, the Complaint alleged that Greyhound breached the RPA by, among other things, excluding from the revenue pool the revenue it received from tickets not redeemed for travel and from fees charged in connection with tickets, id. ¶¶ 98–99. Approximately five hours later, Greyhound filed its own complaint in the Southern District of New York, seeking confirmation of the allegedly binding portion of the arbitration ruling relating to the service model, Dkt. No. 26-2 ¶¶ 69–72, and alleging that Adirondack breached the RPA by, among other things, selling tickets on its website in a way that deprived Greyhound of revenue to which it was entitled, id. ¶¶ 74–77. The parties appear to agree that the two actions present basically the same issues for resolution. Resp. at 4; Defs.' Mem. at 9. There is also no dispute that the action pending before the Court could properly be brought in either the Northern District or the Southern District. Resp. at 11; Defs.' Mem. at 9.

On November 17, 2015, Greyhound moved to transfer this case to the Southern District, arguing that the first-filed rule, which gives preference to the first-filed suit in determining which

3

goes forward, is inapplicable to this case, and that in any event transfer is appropriate under 28 U.S.C. § 1404(a). Defs.' Mem. at 4. Adirondack responded by arguing that the first-filed rule does apply to this case, and that the factors considered under § 1404(a) favor keeping the case in the Northern District. Resp. at 5.

## III. DISCUSSION

### A. The First-Filed Rule

It is well settled in this circuit that "[w]here lawsuits concerning the same parties and issues are pending in two federal districts, the first-filed rule . . . generally affords priority to the first-filed suit when courts choose which suit to permit to go forward." Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995) (citing First City Nat'l Bank & Tr. Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989)). The first-filed rule embodies the idea that the party who files first should be able to choose its venue. Id. It also reflects "considerations of judicial administration and conservation of resources." First City, 878 F.2d at 80. Accordingly, "there is a strong presumption that a later lawsuit will be dismissed in favor of the first-filed lawsuit." Dish Network, L.L.C. v. Am. Broad. Cos., No. 12-CV-4155, 2012 WL 2719161, at *2 (S.D.N.Y. July 9, 2012).

There are two exceptions to the first-filed rule: "(1) where the 'balance of convenience' favors the second-filed action . . . and (2) where 'special circumstances' warrant giving priority to the second suit." Emp'rs Ins. of Wasau v. Fox Entm't Grp., Inc., 522 F.3d 271, 275 (2d Cir. 2008). A court considers the same factors when determining whether the balance of convenience favors the second action as it does when analyzing motions to transfer venue under § 1404(a). N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 113 (2d Cir. 2010). One of

4

the special circumstances warranting deviation from the first-filed rule exists when the first-filed suit is an improper anticipatory filing. Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001). A filing is improperly anticipatory when it is "made under the apparent threat of a presumed adversary filing the mirror image of that suit in a different federal district (or state court)." Ontel Prods., 899 F. Supp. at 1150. This type of filing typically seeks a declaratory judgment that the plaintiff has not performed the act or acts that gave rise to the threat of a lawsuit brought by the defendant. See, e.g., Skiva Int'l, Inc. v. Minx Int'l Inc., No. 12-CV-4580, 2015 WL 5853854, at *1–2 (S.D.N.Y. Oct. 7, 2015) (dismissing as an improper anticipatory filing the plaintiff's first-filed complaint, which sought only a declaratory judgment that it was not infringing the defendant's copyright). Courts in this circuit are also likely to accord the first-filed rule less weight where "the competing suits were filed merely days apart." Ontel Prods., 899 F. Supp. at 1153.

Greyhound argues that even though Adirondack's Complaint was filed before Greyhound's, it is not entitled to priority under the first-filed rule because the difference in time between when the two suits were filed is too small to warrant application of the rule, and because the Complaint was an improper anticipatory filing. Defs.' Mem. at 5–7.

    1. *The "De Minimis" Exception*

Greyhound appears to argue that there is a categorical exception to the first-filed rule that is triggered when the competing lawsuits are filed merely days or, as was the case here, hours apart. According to Greyhound, "precedent in this Circuit disregards the [first-filed] rule entirely in these situations." Reply at 2. The cases Greyhound itself cites, however, show that a short length of time between the two filings merely weakens the strong presumption in favor of the

first-filed suit; it does not eliminate it. For example, the relevant language in one of these cases is that "[a] court is not *required* to hear the first-filed action where the difference in filing date is '*de minimus*' [sic]." Revise Clothing, Inc. v. Levi Strauss & Co., No. 10-CV-5843, 2010 WL 4964099, at *2 (S.D.N.Y. Dec. 6, 2010) (emphasis added). In another case cited by Greyhound, the court stated that "when the filing date difference between the two parallel actions is de minimus [sic], the Court has the *discretion* to disregard the first-filed doctrine altogether." Elbex Video Ltd. v. Tecton, Ltd., No. 00-CV-673, 2000 WL 1708189, at *3 (S.D.N.Y. Nov. 15, 2000) (emphasis added). Although there is language in Ontel Products that seems to point toward a categorical rule, see 899 F. Supp. at 1153 ("Here, because the lawsuits were both filed on the same day, the first-filed rule is inapplicable."), it bears remembering that the timing of the filings was not given decisive weight in that case, since immediately after issuing the quoted statement, the court proceeded to consider the factors used to determine whether the balance of convenience favors transfer, id. at 1153–55.

Here, because the two filings occurred merely hours apart, the Court gives less weight to the presumption afforded by the first-filed rule. See Elbex Video, 2000 WL 1708189, at *3. However, the Court refuses to entirely disregard the preference typically afforded to first-filed complaints, since to do so would, to use language quoted by Greyhound, ignore "the complex problems that can arise from multiple federal filings[, which require] that the district court consider the equities of the situation when exercising its discretion." Dish Network, 2012 WL 2719161, at *2.

6

### 2. The "Improper Anticipatory Filing" Exception

One of the special circumstances in which courts may give preference to the later-filed case exists where the "first-filed lawsuit is an improper anticipatory declaratory judgment action." Emp'rs Ins. of Wasau, 522 F.3d at 275. "District courts in this Circuit have recognized that, in order for a declaratory judgment action to be anticipatory, it must be filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action." Id. at 276. As noted above, this exception is typically found where the "true" plaintiff notifies the "true" defendant of its intention to bring a lawsuit in a particular forum in a specified period of time unless the defendant ceases the allegedly unlawful conduct; the defendant, fearing the inevitable, then races to the courthouse and seeks a declaratory judgment that it is not liable to the plaintiff for the conduct complained of. See, e.g., Elbex Video, 2000 WL 1708189, at *3 ("The facts indicate that Elbex is the true plaintiff in this dispute, and that Tecton filed the declaratory judgment action in California in order to deprive plaintiff of its choice of forum."); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Int'l Wire Grp., Inc., No. 02-CV-10338, 2003 WL 21277114, at *6 (S.D.N.Y. June 2, 2003) ("Courts in the Second Circuit have repeatedly refused to exercise jurisdiction over declaratory actions motivated by a desire to wrest the choice of forum from the real plaintiff."). In another typical situation to which the improper anticipatory filing exception is applied, the parties are engaged in settlement talks. One side states its settlement offer and gives a timeline for the other side's response before a lawsuit will be brought. The other side takes advantage of "the resulting delay in filing to proceed with the mirror image of the anticipated suit." Ontel Prods., 899 F. Supp. at 1150. Allowing the first-filed

suit to proceed in this circumstance would discourage potential plaintiffs "from first attempting to resolve their claims without resorting to litigation." Id.

Greyhound argues that Adirondack's Complaint was improperly anticipatory. Defs.' Mem. at 6. Greyhound seems to acknowledge that the situation presented by this case—in which an arbitration award was issued, and each party filed its own complaint in different districts the day of the award—is not typical for improper anticipatory filing cases. Reply at 3. But, Greyhound suggests, the "reasoning behind the holdings" in the cases it cites "applies with equal force here, where one party raced to the courthouse in anticipation of a competing suit being filed by its adversary in another forum." Id. Greyhound misunderstands the improper anticipatory filing exception, and the Court finds that it is inapplicable to this case.

As discussed above, improper anticipatory filings typically involve either an attempt by the "true" defendant to preempt the "true" plaintiff by seeking a declaratory judgment that it is not liable to the plaintiff, or bad-faith conduct during settlement negotiations. See, e.g., Elbex Video, 2000 WL 1708189, at *3. However, as Greyhound itself points out, "both parties [are] plaintiffs" in this case, Defs.' Mem. at 16, and settlement negotiations are not at issue here. Greyhound does not dispute that Adirondack has a legitimate claim to being a plaintiff; it merely challenges the argument that Adirondack is the *only* true plaintiff. Id.

Greyhound is right that both parties could be plaintiffs here. While the issues in the two lawsuits are the same, each party is fundamentally seeking relief beyond a mere declaration that it is not liable to the other. For example, Greyhound seeks damages from Adirondack for revenue Adirondack has allegedly withheld by failing to use Greyhound's ticketing service on its website. Dkt. No. 26-2 ¶¶ 74–77. Adirondack, for its part, seeks compensation from Greyhound for

8

revenue derived from Greyhound's unredeemed tickets and from fees charged in connection with tickets. Compl. ¶¶ 98–99. The independent causes of action, including those for breach of contract, form the crux of the parties' respective cases. This aspect of the two lawsuits distinguishes them from the situations to which courts normally apply the improper anticipatory filing exception.

Greyhound relies heavily on the "existence of technical deficiencies" in Adirondack's original Complaint, which is supposed to be a "strong indicator[] of an improper anticipatory filing deserving no first filed preference." Reply at 3. However, the case Greyhound cites to support this proposition illustrates why the improper anticipatory filing exception is inapplicable to this case. In Dish Network, the court found an improper anticipatory filing where the plaintiff first-filed an action seeking a declaratory judgment that its technology did not infringe the defendants' copyrights or breach the license agreements it had entered into with the defendants. 2012 WL 2719161, at *1. The plaintiff in that case, unlike Adirondack here, was simply not the "true" plaintiff, and that figured significantly in the court's refusal to apply the first-filed rule. Thus, any issues with Adirondack's first Complaint do not disturb the Court's conclusion that the improper anticipatory filing exception does not apply to this case.

### 3. The "Balance of Convenience" Exception

Because the analysis under the "balance of convenience" exception to the first-filed rule is the same as that employed by courts considering motions to transfer under 28 U.S.C. § 1404(a), N.Y. Marine & Gen. Ins. Co., 599 F.3d at 113, the Court will proceed to consider the parties' arguments concerning § 1404(a).

**B. The Motion to Transfer**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The party moving for transfer bears the burden of showing, by clear and convincing evidence, that transfer is appropriate. N.Y. Marine & Gen. Ins. Co., 599 F.3d at 114. "Further, motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992). Courts consider several factors in determining whether transfer is warranted. These factors include, but are not limited to:

> (1) the convenience of the parties; (2) the convenience of material witnesses; (3) the relative means of the parties; (4) the locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) the availability of process to compel the presence of unwilling witnesses; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties indicating where the case can be tried more expeditiously and inexpensively; and (10) how best to serve the interest of justice, based on an assessment of the totality of material circumstances.

Schomann Int'l Corp. v. N. Wireless, Ltd., 35 F. Supp. 2d 205, 213 (N.D.N.Y. 1999). The Court will consider the factors in turn.[1]

*1. The Convenience of the Witnesses*

---

[1] The parties do not dispute, and the Court agrees, that this case could have been properly brought in the Southern District of New York. Defs.' Mem. at 9; Resp. at 11. Under 28 U.S.C. § 1391(b)(1), venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred," and here "a substantial part of the events giving rise to Adirondack's claims occurred [in the Southern District]." Defs.' Mem. at 9.

Convenience of the witnesses is perhaps the most important consideration in determining whether transfer is appropriate. Int'l Controls & Measurements Corp. v. Honeywell Int'l, Inc., No. 12-CV-1766, 2013 WL 4805801, at *21 (N.D.N.Y. Sept. 9, 2013) (Kahn, J.). The convenience of nonparty witnesses is more important than that of party witnesses. Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005). Courts in this circuit regularly attach little significance to differences in travel time when the party moving for transfer will have to travel anyway. See, e.g., Atl. Recording Corp. v. Project Playlist, Inc., 603 F. Supp. 2d 690, 696 n.8 (S.D.N.Y. 2009) ("For the purposes of this analysis, it is not significant that the flight from the Central District of California to the Northern District of California is shorter than the flight from the Central District of California to [the Southern District of New York]."); Eslworldwide.com, Inc. v. Interland, Inc., No. 06-CV-2503, 2006 WL 1716881, at *4 n.2 (S.D.N.Y. June 21, 2006) (finding that the inconvenience of traveling several more hours where the party must travel in any case does not affect the transfer analysis); Can. Kennel Club v. Cont'l Kennel Club, No. 96-CV-6735, 1997 WL 361991, at *3 n.3 (S.D.N.Y. June 23, 1997) ("Either way, travel is required, and the difference in travel time, or rearranging one's travel plans because fewer flights exist does not significantly affect the balance."). De minimis differences in travel time are particularly unlikely to sway courts one way or the other. See, e.g., United Parcel Serv. of Am., Inc. v. Brown, No. 08-CV-2902, 2009 WL 928292, at *2 (S.D.N.Y. Mar. 30, 2009) ("[S]ince Lakewood[, New Jersey] is only sixty miles from New York City, it is within this court's subpoena power and would not be significantly more convenient for defendant or his witnesses."); see also Jenkins v. Wilson Freight Forwarding Co., 104 F. Supp. 422, 425 (S.D.N.Y. 1952) ("[Section 1404(a)] was designed and reserved for those instances where the

11

transfer was sought to a District Court substantially distant from the district where the action had been instituted; otherwise it is difficult to imagine that there could be real inconvenience to the parties or witnesses.").

Greyhound argues that the convenience of the witnesses favors transfer to the Southern District. Defs.' Mem. at 10. According to Greyhound, the two nonparty witnesses it plans on calling are located in Dallas, Texas, id., while two of the three nonparty witnesses Adirondack intends to call are located in Vails Gate, New York, which is sixty miles from New York City and ninety miles from Albany, and the remaining nonparty witness is located in Dallas, id. at 11. Greyhound argues that each of these nonparty witnesses would find it more convenient to travel to New York City than to Albany, and that therefore the convenience of the nonparty witnesses favors transfer. Id. Greyhound stresses that there are no nonstop flights from Dallas to Albany, while there are nonstop flights from Dallas to New York City. Id. at 11–12. Adirondack argues that Greyhound "ignores the realities of traveling to [New York] City." Resp. at 15. In particular, Adirondack suggests that the congestion at New York City airports, combined with the travel time between those airports and the Southern District courthouse, cancels out any time advantage resulting from the availability of nonstop flights from Dallas to New York City. Id.

Greyhound claims that traveling between Dallas and Albany would take two to four more hours than traveling between Dallas and New York City. Dkt. No. 26-2 ("Kurien Declaration") at 2. Taking the low end of that estimate, and making the unlikely assumption that it is no faster to travel from Albany International Airport to the Northern District courthouse than from a New York City Airport to the Southern District courthouse, the Court nevertheless finds that any difference in travel time is de minimis and does not affect the transfer analysis one way or the

12

other. A two-hour difference in travel time is simply not "significantly more convenient" for Greyhound's nonparty witnesses. See United Parcel Serv. of Am., 2009 WL 928292, at *2. Moreover, Adirondack's nonparty witnesses, who are located in Vails Gate, New York, would not be significantly inconvenienced by having to travel to Albany rather than to New York City. Keeping in mind that Greyhound has the burden of showing inconvenience, N.Y. Marine & Gen. Ins. Co., 599 F.3d at 114, the Court finds that Greyhound has failed to demonstrate inconvenience to the nonparty witnesses from keeping this case in the Northern District.

The analysis is the same for Greyhound's party witnesses, all but one of whom rare located in Dallas. Defs.' Mem. at 11–12. Seven of Adirondack's nine party witnesses are located in the Northern District, and the remaining two party witnesses are located in Rochester, New York, which "is only a 3½-hour drive from the Northern District Courthouse—versus a 5½-hour drive (not taking into account traffic), or a flight (and then a drive from the airport), to the Southern District courthouse." Dkt. No. 49 ("Berardi Declaration") at 11. Therefore, because Greyhound has not shown any meaningful inconvenience to its or Adirondack's witnesses from keeping the case in the Northern District, the Court finds that this factor is neutral with respect to transfer.

### 2. *The Convenience of the Parties*

Greyhound argues that the convenience of the parties favors transfer for essentially the same reasons as it offered regarding the convenience of the witnesses. Defs.' Mem. at 13. Greyhound emphasizes that its principal place of business is located in Dallas, from which it is allegedly easier to get to New York City than to Albany. Id. As Greyhound acknowledges, Adirondack's principal place of business is in the Northern District. For the reasons discussed

above, the Court finds that the convenience of the parties does not tip the balance in favor of or against transfer.[2]

### 3. *The Locus of Operative Facts*

"The location of the operative facts is traditionally an important factor to be considered in deciding where a case should be tried." 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 134 (S.D.N.Y. 1994). The locus of operative facts is determined by reference to the site where the events giving rise to the claim occurred. Id. "Although choice of law analysis must conclude that one particular jurisdiction's law applies, venue analysis may determine that there are several loci of operative facts." Adams v. Key Tronic Corp., No. 94-CV-A0535, 1997 WL 1864, at *4 n.1 (S.D.N.Y. Jan. 2, 1997). Where the main cause of action raised in a complaint is breach of contract, "the locus of operative facts [is] where the contract was performed, not where it was proposed and negotiated." Billing v. Commerce One, Inc., 186 F. Supp. 2d. 375, 378 (S.D.N.Y. 2002).

Greyhound contends that the locus of operative facts is the Southern District, basing this conclusion on the fact that 81 percent of tickets redeemed for nonstop bus rides on routes covered by the pool were for travel to or from New York City. Defs.' Mem. at 14. According to Greyhound, "the actual volume of operations and customers" is the proper measure of the locus of operative facts. Id. Adirondack, on the other hand, argues that the center of gravity rests in the Northern District, since all of the pooled routes run within the Northern District, while only an

---

[2] To the extent that Greyhound suggests that the Southern District is more convenient to both parties' Washington D.C.-based counsel, Defs.' Mem. at 13, the Court notes that "it is well-settled that inconvenience to counsel is not a relevant consideration in a motion to transfer," Esposito v. Metro-North Commuter R.R. Co., No. 91-CV-946, 1992 WL 165821, at *7 (N.D.N.Y. July 8, 1992).

14

insignificant percentage travel through the Southern District, and the "overwhelming majority of miles traveled along the Pooled Routes are within the Northern District." Resp. at 18.

The Court finds that both the Northern and Southern Districts are loci of operative facts, and that therefore this factors weighs neither for nor against transfer. See Atl. Recording Corp., 603 F. Supp. 2d at 696 ("Due to the nature of the claims plaintiffs assert, there are several loci of operative facts."). This case is about the parties' ongoing disputes regarding their rights and obligations under the RPA, which encompasses intercity bus routes throughout New York. Performance of this contract can be measured equally well in terms of the location of the highest-volume routes, which appear to involve travel to and from New York City, or the location of pooled routes, only a tiny percentage of which run through the Southern District. The Court is not persuaded by Greyhound's assertion that the "number of road miles in the Northern District [has] no apparent relevance." Reply at 6. After all, the purpose of the RPA is to pool bus routes in New York, and if more of those routes are located on roads in the Northern District than in the Southern District, that is not obviously less relevant than where the buses begin and end their journeys. For example, Greyhound fails to mention that one aspect of this dispute centers around "the 'cost to sell,' which is a negotiated rate to reimburse Greyhound for paying certain operating expenses associated with maintaining stations and terminals along the Pooled Routes." Resp. at 2–3. Greyhound does not contest Adirondack's assertion that, of the twenty-one stations and terminals along the pooled routes, thirteen are located in the Northern District, while only one is located in the Southern District. Id. at 19. The routes along which these stations and terminals are located are thus concentrated in the Northern District, and that fact is plainly relevant to this case. Bearing in mind again that Greyhound, as the party moving for transfer, bears the burden of

persuading the court that transfer is appropriate, N.Y. Marine & Gen. Ins. Co., 599 F.3d at 114, the Court finds that this factor does not tip the balance either way with respect to transfer.

### 4. Plaintiff's Choice of Forum

"A plaintiff's choice of forum usually weighs heavily in considering a motion to transfer venue. It militates against transfer when operative facts occurred in the plaintiff's choice of forum and the plaintiff is domiciled there." JetBlue Airways Corp. v. Helferich Patent Licensing, LLC, 960 F. Supp. 2d 383, 400 (E.D.N.Y. 2013); see also Royal Ins. Co. of Am. v. United States, 998 F. Supp. 351, 353 (S.D.N.Y.1998) ("A plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer."). As discussed above, the Northern District was one of the loci of operative facts here, and Adirondack's principal place of business is located in the Northern District. Therefore, Adirondack's decision to file in the Northern District weighs against transfer. The Court is not convinced by Greyhound's assertion that because both parties are potential plaintiffs in this case, Adirondack's choice of forum is not entitled to any weight. Defs.' Mem. at 16. Greyhound cites no authority for this proposition, and the Court can find none. Therefore, the Court finds that this factor weighs against transfer.

### 5. Judicial Efficiency

The docket conditions and calendar congestion of the competing districts are given some weight in determining whether transfer is appropriate. Litton v. Avomex Inc., No. 08-CV-1340, 2010 WL 160121, at *18 (N.D.N.Y. Jan. 14, 2010). Some courts in this circuit have measured this factor by looking to the average caseload per judge in the respective districts, e.g., id., while others have looked to the average time to disposition, e.g., Int'l Controls & Measurements Corp,

2013 WL 4805801, at *20. Caseload statistics show that time to disposition is shorter in the Southern District than in the Northern, Defs.' Mem. at 17, while there are more weighted filings per judge in the Southern District than in the Northern District, Resp. at 23. Since there is no binding authority as to the weight to be accorded to these different measures of docket conditions, the Court finds that this factor is neutral with respect to transfer.

> *6. The Location of the Relevant Documents, the Availability of Process to Compel Unwilling Witnesses, the Relative Means of the Parties, and the Forum's Familiarity with the Applicable Law*

The parties agree that the location of the relevant documents, the relative means of the parties, and the forum's familiarity with the applicable law are all largely neutral with respect to transfer, Defs.' Mem. at 13–16; Resp. at 21, and the Court agrees with the parties. This Court has held that "in today's world of faxing, scanning, and emailing documents, the location of relevant documents is a largely neutral factor." Int'l Controls & Measurements Corp, 2013 WL 4805801, at *23. There is no reason to consider the relative means of the parties because both Adirondack and Greyhound are large corporations, and thus there is no "apparent disparity between the parties" that would require an examination of this factor. Id. Also, there is no reason to believe that the Southern District is more familiar than the Northern District with Texas law, which according to the RPA governs disputes arising from the agreement. Defs.' Mem. at 16.

Greyhound argues that the availability of process to compel unwilling witnesses is mostly neutral, Defs.' Mem. at 14–15, while Adirondack contends that this factor weighs slightly against transfer, pointing to a nonparty witness it may call who resides in Vails Gate, New York, located ninety miles from the Northern District courthouse and sixty miles from the Southern District

17

courthouse. Resp. at 17. However, this witness is within the 100-mile subpoena power of both districts, Fed. R. Civ. P. 45(c)(1)(A), so this factor is neutral with respect to transfer.

### 7. *Aggregation of Factors*

One factor, the plaintiff's choice of forum, weighs against transfer, and the remaining factors are neutral with respect to transfer. Greyhound has failed to show that the exceptions to the first-filed rule apply to this case, and it has not demonstrated that the factors considered under § 1404(a) warrant transfer. Therefore, the Court will not transfer this action to the Southern District of New York.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 26) to Transfer to the Southern District of New York is **DENIED**; and it is further

**ORDERED**, that in accordance with the Third Stipulation and Order Staying Proceedings (Dkt. No. 43), Defendant's response to Plaintiff's Motion to Partially Vacate Arbitral Award (Dkt. No. 33) shall be due **within fourteen (14) days** of the resolution of the Southern District Transfer Motion, and Defendant may move or answer the Plaintiff's Amended Complaint (Dkt. No. 31) **within fourteen (14) days** of the resolution of the Southern District Transfer Motion; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: September 28, 2016
             Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge